1  David K. Eldan SBN 163592
   PARKER, MILLIKEN, CLARK, O'HARA & SAMUELIAN
2  A Professional Corporation
   555 S. Flower St., 30th Floor
3  Los Angeles, California 90071-2440
   Telephone:    (213) 683-6500
4  Facsimile:    (213) 683-6669
   deldan@pmcos.com
5
   Attorneys for Debtor
6  CEM BUILDERS, INC., dba TUCKER ENGINEERING

7

8                 UNITED STATES BANKRUPTCY COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                    (SANTA ANA DIVISION)

11 In re:                                    Case no.:    8:10-bk-13837-TA
                                             Case filed:  March 26, 2010
12 CEM BUILDERS, INC.,                       Chapter 11

13              Debtor.                       **MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF MOTION
14                                            TO DISMISS INVOLUNTARY
                                             BANKRUPTCY PETITION**
15
                                             Date:      To be set
16                                            Time:      To be set
                                             Place:     Courtroom 5B
17                                                       Ronald Reagan Federal Building and
                                                         United States Courthouse
18                                                       411 West Fourth Street, 5th Floor
                                                         Santa Ana, California 92701-4593
19

20 **I.      Introduction**

21      This case was initiated by the filing of an involuntary petition on March 26.  The petition

22 should be dismissed for two reasons.

23      First: the alleged "debtor" – CEM Builders, Inc., dba Tucker Engineering ("Tucker"), a

24 California corporation – is generally paying its debts as they become due, and always has done

25 so; and no custodian has ever been appointed for Tucker or taken possession of its property.

26 Indeed, the involuntary petition does not even allege that Tucker is generally not paying its debts

27 as they come due (or that a custodian has been appointed or taken possession).

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY PETITION
361677.1  97001.501

1    Second: not a single one of the three petitioning creditors holds a claim that is eligible to

2    be counted in the context of an involuntary petition:

3    One, Edgar Vega, is completely unknown to Tucker, and certainly not among Tucker's

4    creditors.

5    The second, Sager Associates, Inc., has <u>asked that its name be withdrawn from the</u>

6    <u>petition</u>, and, in a declaration, <u>now states that it is not a creditor of Tucker at all</u> – instead, it is

7    owed money by the third petitioning creditor, Right Choice Services, Inc. ("Right Choice").

8    The final petitioning creditor, and the one with by far the largest alleged claim, is Right

9    Choice. As set out below, Right Choice is a disgruntled former subcontractor on a public works

10   project for the Port of Long Beach, on which Tucker is the prime contractor. Right Choice was

11   fired in August 2009, filed a vastly inflated and fraudulent stop-notice with the Port of Long

12   Beach, and then lost in state court when Tucker successfully demanded that the stop notice be

13   released. Tucker owes Right Choice nothing; in fact, it is Right Choice which owes Tucker at

14   least $193,000. In sum, Right Choice is not a creditor; and to the extent it claims to it is a

15   creditor, the claim is the subject of exceedingly vigorous dispute.

16   The <u>bottom line</u>, then, is this: there is no allegation that Tucker is not generally paying its

17   debts as they come due; and none of the petitioning creditors holds a claim that can properly be

18   the foundation of an involuntary petition. The petition therefore must be dismissed.

19   **II.     Facts**

20   **A.     Tucker's background**

21   Tucker was formed in or about April 2000, and is a general engineering contractor, and

22   functions as both a prime contractor and a subcontractor on large civil engineering projects, such

23   as the construction of roads, bridges, levies, landslide repair and the like. Such projects typically

24   involve a variety of functions, including grading, paving, demolition, construction, installation of

25   underground utilities and removal of hazardous materials. For approximately the past three years,

26   the majority of projects on which Tucker has served as a prime contractor or subcontractor have

27   been public-works projects, in which the project owner is a public entity. Declaration of David

28   Rossi ("Rossi Decl."), ¶ 2.                                    - 2 -

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY PETITION
361677.1  97001.501

1    Tucker has two office locations: a principal office in Los Gatos, California, and a branch

2    office in Irvine, California. It currently has approximately 75 employees (approximately 11 in the

3    Los Gatos office, 4 in the Irvine office, and 60 in the field, at various job sites). Id. at ¶¶ 4-5.

4    Tucker is now paying, and has at all times during its existence paid, its bills as they come

5    due. Id. at ¶ 6. As a prime contractor (and occasionally as a subcontractor) on public works

6    projects (and sometimes on private projects), Tucker is required to post a "bid bond" when it

7    submits a bid for such projects, and a "payment and performance" bond if and when it is awarded

8    the contract. Such bonds are issued by surety companies, which are willing to issue them only

9    after a thorough examination of Tucker's finances, including its assets, liabilities and cash flow.

10    Id. at ¶ 7. During the entire term of its existence, Tucker has never had difficulty procuring the

11    above-described bonds, even though it routinely obtains bonds in amounts ranging from $500,000

12    to $3.5 million, and routinely has multiple such bonds outstanding at any given time. This

13    demonstrates the confidence that our bonding company has in Tucker's financial strength, even in

14    the current economic environment, in which bonding companies will routinely refuse to issue

15    bonds to contractors who have negative cash flow for even a single fiscal quarter. Id. at ¶ 8.

16    Moreover, no custodian has, within the past 120 days or at any other time, been appointed

17    for Tucker, or taken possession of any of Tucker's property. Id. at ¶ 9.

18    **B.    The project at the Port of Long Beach and termination of Right Choice**

19    The petitioning creditor holding the largest claim is Right Choice Services, Inc. ("Right

20    Choice"). Id. at ¶ 13. The background of Tucker's relationship with Right Choice is as follows.

21    In or around June 2009, Tucker was awarded, as prime contractor, a contract with the Port

22    of Long Beach for preparatory work (e.g., demolition, grading, installation of underground

23    utilities, removal of hazardous materials) for the construction of a new administration building.

24    The contract amount was approximately $2.5 million. Id. at ¶ 14.

25    Tucker listed Right Choice as a subcontractor on its bid, and Right Choice was awarded

26    the largest subcontract on the job, worth approximately $790,000. Under the subcontract, Right

27    Choice was responsible for demolition, asbestos abatement, installation of underground utilities

28    and paving. Id. at ¶ 15.

- 3 -

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY PETITION
361677.1 97001.501

1    Work on the project commenced in June 2009.  In or around the end of August 2009,

2    Tucker petitioned the Port of Long Beach for permission to remove Right Choice as a

3    subcontractor, on the grounds that Right Choice was failing to perform as required under its

4    subcontract, had not provided the certified payrolls required on public works projects (to show

5    that it had, in fact, paid its employees), had not provided a payment and performance bond despite

6    Tucker's request for one (a subcontractor, upon request from a prime contractor, is required by

7    law to provide such a bond on public works projects), and was falling behind schedule (which had

8    the effect, in turn, of exposing to Tucker to $4,000 per day in liability for liquidated damages – a

9    claim which the Port is in fact now pursuing, though Tucker is contesting it).  Id. at ¶ 16.

10    On or about November 24, 2009, the Port of Long Beach issued a decision allowing

11    Tucker to remove Right Choice as a subcontractor, because of Right Choice's failure to perform

12    under its contract, failure to provide certified payroll and failure to provide the required bond.

13    Tucker terminated Right Choice from the project on the same day.  Id. at ¶ 17.

14    On December 2, 2009, Right Choice filed a "stop notice" for $2.5 million with the Port of

15    Long Beach – an amount more than two and one-half times the amount Right Choice would have

16    received had it properly and timely performed under its subcontract with Tucker.  Id. at ¶ 18.

17    As a result of the stop notice, the Port of Long Beach stopped all payments on the project,

18    with the result that Tucker received no progress payments from the Port, as would otherwise be

19    made, for work performed during the months of October 2009 through February 2010.  As a

20    direct of Right Choice's filing of the stop notice, Tucker has not been paid for any work

21    performed on the project after September 2009.  Id. at ¶ 19.

22    On March 9, 2010, Tucker commenced a lawsuit entitled CEM Builders, Inc. v. Right

23    Choice Services, Inc. and pending as case number NC054252 in the Superior Court of the State of

24    California, County of Los Angeles, South District, in which it alleged that Right Choice's stop

25    notice was intentionally overstated in amount, and, pursuant to sections 3198 and 3201 of the

26    California Civil Code, demanded that all funds held by the Port of Long Beach as a result of the

27    stop notice be released.  Id. at ¶ 20.

28    On March 30, 2010, the Superior Court granted Tucker's demand for release of all funds

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY PETITION
361677.1  97001.501

1  held by the Port of Long Beach pursuant to the stop notice.  The Court required Tucker to post an

2  additional payment and performance bond with the City of Long Beach in the amount of

3  $300,000, which Tucker promptly did.  Id. at ¶ 21.

4        As a result of Right Choice's failure to perform its duties under its subcontract, and its

5  subsequent termination from the project, Tucker has incurred, and continues to incur, damages as

6  a result of its having to complete, itself, work that should have been performed by Right Choice.

7  Tucker estimates that, as a result of Right Choice's breach, Right Choice is, today, indebted to

8  Tucker in the approximate amount of $193,000.  Id. at ¶ 22.  The result, as between Right Choice

9  and Tucker, is that Right Choice is not a "creditor" of Tucker at all; instead, Right Choice owes

10 Tucker, at a minimum, approximately $193,000.

11 **III.    Applicable law**

12        Against that background, the analysis is simple.

13        **A.     The creditors don't even _allege_ of the grounds for an involuntary petition**

14        First, there are only two grounds for an involuntary petition: either the debtor is not

15 generally paying its debts as they come due (other than debts that are in bona fide dispute as to

16 liability or amount); or, within 120 days preceding the filing of the petition, a custodian (typically

17 a receiver or assignee for benefit of creditors) was appointed or took possession of substantially

18 all of the alleged debtor's property.  11 U.S.C. § 303(h); Ahart, California Practice Guide:

19 Bankruptcy, ¶ 5:1075 (Rutter 2010).

20        The response is straightforward.  As set out above, Tucker is generally paying its debts as

21 they come due, and always has; and no custodian has ever been appointed for Tucker or taken

22 possession of any of its property.  Moreover, the petition does not even _allege_ a failure to pay

23 debts or the appointment of a custodian.

24        In short: the petitioning creditors haven't even made the allegations necessary to support

25 an involuntary petition; and, if they had, the allegations would be untrue.

26        **B.     The "creditors" don't have claims to support an involuntary petition**

27        Second: the petitioning "creditors" in this case aren't Tucker's creditors at all – or, to the

28 extent they are, do not have claims to support an involuntary petition.

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY PETITION
361677.1 97001.501

1    To start: one of the alleged creditors, Sager Associates, has stated unequivocally that it is

2    not a creditor of Tucker's, and in fact is owed money by Right Choice (the largest petitioning

3    creditor in this case) rather than by Tucker.  See Declaration of Jonathan Sagherian ("Sagherian

4    Decl."), at ¶¶ 5-6.

5    Moreover, another petitioning creditor, "Edgar Vega", is unknown to Tucker – it has

6    never heard of him, as a creditor or otherwise.  See Rossi Decl., at ¶ 12.

7    Finally, the largest petitioning creditor, by far, is Right Choice.  But, as set forth in detail

8    above, Right Choice is not a "creditor" of Tucker's at all – in fact, it owes Tucker at least

9    $193,000.  Even if one were to view Right Choice's claims against Tucker in isolation from

10   Tucker's claims back against Right Choice, the result is that (a) Right Choice is fully secured by

11   the bond Tucker has posted with the City of Long Beach, and (b) Right Choice's claim against

12   Tucker is, obviously, subject to vigorous dispute.

13   The bottom line, then, is that the involuntary petition against Tucker was not signed by

14   any creditor holding an undisputed, non-contingent unsecured claim.

15   **IV.    Conclusion**

16   For the reasons stated above, Tucker respectfully requests that the Court grant its motion

17   and dismiss the petition filed against it.

18   DATED:  April 8, 2010                PARKER, MILLIKEN, CLARK, O'HARA &
                                          SAMUELIAN
19                                        A Professional Corporation

20

21                                        By: /s/ David K. Eldan
                                          DAVID K. ELDAN
22                                        Attorneys for Debtor
                                          CEM BUILDERS, INC., dba TUCKER
23                                        ENGINEERING

24

25

26

27

28
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY PETITION
361677.1  97001.501

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION